**SIGNED THIS: March 10, 2010**

                                              **GERALD D. FINES**
                              **UNITED STATES BANKRUPTCY JUDGE**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| CHARLETTE M. BRYANT, | ) | Bankruptcy Case No. 04-92160 |
| | ) | |
| Debtor. | ) | |
| | | |
| CHARLETTE M. BRYANT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Adversary Case No. 09-9054 |
| | ) | |
| TIDEWATER FINANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION

      This matter having come before the Court on a Motion for Sanctions for Violation of the Discharge Injunction filed by the Debtor/Plaintiff; the Court, having reviewed the stipulated facts and exhibits submitted by the parties and their written memoranda of law and being otherwise fully advised in the premises, makes the following findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

Findings of Fact

      The parties have stipulated to the material facts in this matter and have also stipulated to the exhibits to be reviewed by the Court as indicated by the Amended Joint Stipulation of Facts

and attachments filed with the Court on February 9, 2010. The material facts are in pertinent part as follows:

1. Debtor/Plaintiff, Charlette M. Bryant, commenced the Chapter 13 proceeding underlying this adversary proceeding on June 30, 2004.

2. On the filing date, Debtor/Plaintiff owed $11,387.70 to Defendant, Tidewater Finance Company, who was the assignee of an installment sale contract that Debtor/Plaintiff and Gateway Chevrolet, Geo in Chicago, entered on March 7, 2003, in which Debtor/Plaintiff purchased a 2001 Saturn (the "Vehicle") and financed the unpaid purchase price on terms that included her paying sixty consecutive monthly installments of $350.79, the first installment due on April 21, 2003, and the last installment due on March 21, 2008.

3. Debtor/Plaintiff filed a Chapter 13 plan dated June 30, 2004, (the "Plan") that classified secured claims. Class Two B claims were defined as "Secured claims in default other than real property [Section 1322(b)(5)]" and the Plan provided for their treatment in this manner "[t]he Trustee shall cure defaults (plus interest if applicable on claims set forth below on which the last payment is due after the final payment under the Plan is due. Creditors shall retain their liens."

4. Debtor/Plaintiff classified her indebtedness to Defendant as a Class Two B claim, and estimated her arrearage to Defendant as $400. Paragraph 3 of the OTHER PROVISIONS of the Plan specified that Defendant's claim "shall be paid directly to creditors (not through plan.)"

5. Defendant filed a proof of claim on July 26, 2004, which stated that Debtor/Plaintiff was $816.66 in arrears in paying the monthly installments that the Contract called for, and that the total amount due to Defendant was $11,387.70.

6. The Court confirmed the Plan without amendment or modification in a virtual order on September 28, 2004. The Chapter 13 Trustee cured Defendant's arrearage of $816.66, but disbursed no other funds to Defendant.

7.     During the administration of Debtor/Plaintiff's Chapter 13 case, Defendant filed a motion for relief from the automatic stay as to the Vehicle, because Debtor/Plaintiff had failed to directly pay Defendant the regular monthly installments that came due under the Contract. Debtor/Plaintiff did not oppose termination of the automatic stay as to the Vehicle, and Defendant recovered the Vehicle and disposed of it under applicable state law. Debtor/Plaintiff did not modify the Plan after Defendant obtained relief from the automatic stay or object to all or any part of Defendant's claim, and she received a Chapter 13 discharge on January 8, 2008, before March 21, 2008, when her final payment was due under the Contract.

8.     After Debtor/Plaintiff received her Chapter 13 discharge, Defendant commenced a civil action against her in state court to collect the remaining balance due under the Contract, after applying the disbursements received from the Chapter 13 Trustee and the net proceeds from the disposition of the Vehicle.

9.     The Debtor/Plaintiff filed the instant adversary proceeding on August 25, 2009, seeking sanctions against Defendant for violation of the discharge injunction pursuant to 11 U.S.C. § 524 and also seeking a declaration that any and all obligations to Defendant were discharged in her Chapter 13 bankruptcy proceeding.

## Conclusions of Law

The Debtor/Plaintiff asserts that, as a result of her Chapter 13 discharge, no sums are due and owing to Defendant, and that the civil action taken by Defendant in the state court following the Chapter 13 discharge was a violation of the discharge injunction under 11 U.S.C. § 524. A thorough review of the facts of this matter and of the law leads the Court to conclude that there is no support for the Debtor/Plaintiff's position.

Debtor/Plaintiff's Chapter 13 plan classified her indebtedness to Defendant in Class Two B, which consisted of "Secured claims in default other than real property [Section 1322(b)(5)]," for which the Plan provided that "[t]he Trustee shall cure defaults . . . on claims . . . on which the last payment is due after the final payment under the Plan is due. Creditors shall retain their

liens." Debtor/Plaintiff estimated her arrearage to Defendant as $400 and Paragraph 3 of the OTHER PROVISIONS of the Plan specified that Defendant's claim was one that "shall be paid directly to creditors (not through plan)."

Defendant's proof of claim established the arrearage at $816.66 and the total amount due as $11,387.70. The Court confirmed the Plan and the Chapter 13 Trustee cured the arrearage but disbursed no other funds to Defendant.

Contrary to Paragraph 3 of the OTHER PROVISIONS of the Plan, Debtor/Plaintiff did not pay the post-filing date monthly installments that came due under the Contract, so Defendant filed a motion for relief from the automatic stay to which Debtor/Plaintiff consented. Defendant recovered the Vehicle and disposed of it under state law. Debtor/Plaintiff did not modify the Plan after Defendant obtained relief from the automatic stay, or object to all or any part of Defendant's claim. She received a Chapter 13 discharge on January 8, 2008, before March 21, 2008, when her final payment was due under the Contract.

After Debtor/Plaintiff received her discharge, Defendant, believing that the debt under the Contract was not discharged, commenced a civil action against her in state court to collect the remaining balance due under the Contract. Debtor/Plaintiff commenced this action as a result.

Defendant propounded Requests for Admission to Debtor/Plaintiff to which she responded admitting the genuineness of the Contract, that her first payment under the Contract was due on April 21, 2003, and her final payment was due on March 21, 2008, the genuineness of her Chapter 13 Plan, that the Court confirmed it, the payments she made to her Chapter 13 Trustee, that the Trustee paid Defendant $816.66 to cure her arrearage under the Contract, and that she made her final payment to the Trustee on December 6, 2007.

The question presented involves a matter of statutory construction. In such cases, first resort is to the language of the statute involved. Toibb v. Radloff, 501 U.S. 157, 162, 111 S.Ct. 2197, 2200 (1991) ("Where, as here, the resolution of a question of federal law turns on a statute and the intention of Congress, we look first to the statutory language and then to the legislative

4

history if the statutory language is unclear"). However, in bankruptcy cases "[i]t is well established that 'when the statute's language is plan, the sole function of the courts - at least where the disposition required by the text is not absurd - is to enforce it according to its terms.'" Till v. SCS Credit Corp., 541 U.S. 465, 486, 124 S.Ct. 1951, 1965 (2004) *citing* Lamie v. U.S. Trustee, 540 U.S. 526, 534, 124 S.Ct. 1023, 1030 (2004) (*quoting* Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A., 530 U.S. 1, 6, 120 S.Ct. 1942 (2000).

Four statutes are involved: 11 U.S.C. §§ 1322(b)(5), 1327(a), 1328(a), and 1329. Section 1322 provides in pertinent part:

> § 1322.   **Contents of plan**
>
> (a)   The plan shall--
>
> (1)   provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;
>
> (2)   provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim;
>
> (3)   if the plan classifies claims, provide the same treatment for each claim within a particular class; and,
>
> (4)   notwithstanding any other provisions of this section, a plan may provide for less than full payment of all amounts owed for a claim entitled to priority under section 507(a)(1)(B) only if the plan provides that all of the debtor's projected disposable income for a 5-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.
>
> (b)   Subject to subsections (a) and (c) of this section, the plan may--
>
> (1)   designate a class or classes of unsecured claims, as provided in section 1122 of this title, but may not discriminate unfairly against any class so designated; however, such plan may treat claims for a consumer debt of the debtor if an individual is liable on such consumer debt with the debtor differently than other unsecured claims;

    (2)    modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

    (3)    provide for the curing or waiving of any default;

    (4)    provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim;

    (5)    notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due;

Courts uniformly hold that the language in § 1322(b)(5) is clear and unambiguous. Grubbs v. Houston First American Sav. Ass'n., 718 F.2d 694, 698 (5th Cir. 1983); In re Stafford, 123 B.R. 415, 420 (N.D. Ala. 1991) ("[T]he clear language of section 1322(b)(5) . . ."); In re Truss, 404 B.R. 329, 332 (Bankr. E.D. Wis. 2009) (section 1322(b)(5) is specific and clear in its language); In re Hanson, 310 B.R. 131, 134 (Bankr. W.D. Wis. 2004) (11 U.S.C. § 1322(b)(5) is specific and clear in its language); In re Powell, 223 B.R. 225, 231 (Bankr. N.D. Ala. 1998); In re Stokes, 39 B.R. 336, 339 (Bankr. E.D. Va. 1984) (the clear language of § 1322(b)(5)); In re Chambers, 27 B.R. 687 (Bankr. S.D. Fla. 1983).

Congress enacted § 1322(b)(5) for treating long term debt on which the last payment is due after the date the final payment under the plan is due. House Report No. 95-595, 95th Cong. 1st. Sess. 429 (1977). It allows a debtor the discretion to "provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due." As a result, § 1322(b)(5) has been applied to long term installment obligations other than mortgages. In re Ayres-Haley, 2008 WL 163580 (Bankr. E.D. Va. 2008) (installment loan secured by an automobile); In re Jones, 2009 WL 2253263 (Bankr. E.D. N.C. 2009); In re Truss, 404 B.R. 329 (Bankr. E.D. Wis. 2009) (student loan); In re

6

Delauder, 189 B.R. 639 (Bankr. E.D. Va. 1995); In re Garner, 13 B.R. 799 (Bankr. S.D. N.Y. 1981) (automobile loan).

The term "cure" in § 1322(b)(5) refers to the restoration of the way things were before the default, to remedy or rectify the default and restore matters to the *status quo ante*. Matter of Clark, 738 F.2d 869, 872 (7th Cir. 1984). The "'last payment' language in § 1322(b)(5) refers to when the last payment would have been due under the original mortgage note had it not been accelerated. Such an interpretation is necessary to give effect to the curative purpose Congress intended in enacting § 1322(b)(5)." In re Stokes, 39 B.R. 336, 341 (Bankr. E.D. Va. 1984) *citing* In re Taddeo, 685 F.2d 24 (2nd Cir. 1982); In re Gwinn, 34 B.R. 936 (Bankr. S.D. Ohio 1983).

Debtor/Plaintiff employed § 1322(b)(5) so the Trustee would cure her default to Defendant and she would pay the installments that came due after the filing date. Her Plan specifically identified § 1322(b)(5) for the treatment of Defendant's allowed secured claim. When her Plan was confirmed on September 28, 2004, it became binding on both Debtor/Plaintiff and Defendant as a result. 11 U.S.C. § 1327(a).

Section 1327 of the Bankruptcy Code provides:

§ 1327.     **Effect of confirmation**

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or in the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

Once the Court confirmed the Plan, Debtor/Plaintiff was bound by its terms, which included her obligation to directly pay Defendant the contractual installments that came due after the filing date. The Court of Appeals for the Seventh Circuit has explicitly held that, if a Chapter

13 plan makes provision for a claim that is unsatisfactory to a secured creditor, the creditor has an obligation to bring the matter to the attention of the Bankruptcy Court, and, even after confirmation, a creditor is not without remedies if it acts timely. In re Harvey, 213 F.3d 318, 321 (7th Cir. 2000) ("a confirmed plan acts more or less like a court-approved contract or consent decree that binds both the debtor and all the creditors"). Notwithstanding the binding consequences of plan confirmation, neither debtor nor creditor is without a remedy when a post-confirmation change in circumstances occurs.

> We do not mean to suggest that a party may never claim in a subsequent proceeding that a provision of a Chapter 13 plan is ambiguous and should be read one way or another. It may be the case that an approved plan contains a term that raises an unexpected problem at some point in the future. No party to a bankruptcy plan confirmation proceeding can be expected to envision every foreseeable circumstance that could require a court to construe a particular plan provision. In re Harvey, 213 F.3d 318, 323 (7th Cir. 2000).

See also: Matter of Chappell, 984 F.2d 775, 782 (7th Cir. 1993); In re Burgess, 143 Fed.Appx. 692, 2005 WL 1772872 (7th Cir. 2005).

The Bankruptcy Code places on a debtor's shoulders the same obligation that creditors have to bring matters to the attention of the Court, although the time for a debtor to act is longer than that for creditors. For example, Debtor/Plaintiff could have filed a pleading in response to Defendant's Motion for Relief requesting that any deficiency resulting from Defendant's disposition of the Vehicle be treated as an unsecured claim. Instead, she did nothing, and no provision in the Consent Order that terminated the stay as to the Vehicle affected either Defendant's allowed secured claim or its treatment under the Plan. Debtor/Plaintiff could have also modified her Chapter 13 plan pursuant to 11 U.S.C. § 1329 to change the treatment of Defendant's claim as a result of termination of the automatic stay as to the Vehicle. In re Walter, 224 B.R. 876 (Bankr. W.D. Tenn. 1998); but see In re Adkins, 425 F.3d 296 (6th Cir. 2005).

But Debtor/Plaintiff did neither. She received a discharge as the proponent of a confirmed and unmodified Chapter 13 plan that treated Defendant's allowed secured claim under § 1322(b)(5) and that left Defendant's rights under the Contract unimpaired. In re Huyck, 252 B.R.

8

509, 513 (Bankr. D. Colo. 2000). Claims treated in Chapter 13 plans under paragraph (5) of § 1322(b) are <u>not</u> discharged in Chapter 13 proceedings. Section 1328 provides in pertinent part:

> § 1328.    **Discharge**
>
> (a)    Subject to subsection (d), as soon as practicable after completion by the debtor of all payments under the plan, and in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was filed, but only to the extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order of relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt--
>
> (1)    provided for under section 1332(b)(5);

A recent opinion by the Bankruptcy Court for the Eastern District of Pennsylvania is instructive. <u>In re Padilla</u>, 389 B.R. 409 (Bankr. E.D. Pa. 2008). In <u>Padilla</u>, the Court confirmed a Chapter 13 plan that provided for the payment of all of the prepetition arrears owed [on her mortgage]. Unlike Debtor/Plaintiff's Plan, Padilla's plan neither cited 11 U.S.C. § 1322(b)(5), nor adopted its language, but there was no doubt that the debtor invoked § 1322(b)(5) in treating that claim. <u>Padilla</u>, 389 B.R. at 418-419. After she completed her Chapter 13 plan and received a discharge, GMAC Mortgage assessed costs and attorneys fees against Padilla, and she, like Debtor/Plaintiff, reopened her case and commenced an adversary proceeding to have GMAC Mortgage held in contempt for allegedly violating her discharge. The Court rejected that argument.

> [B]ecause the Confirmed Plan provided for GMACM's claim under § 1322(b)(5), GMACM's claim was expressly excepted from the discharge the Debtor received at the conclusion of her case. *E.g.*, <u>Smith v. Keycorp Mortgage, Inc.</u>, 151 B.R. 870, 877 (N.D. Ill. 1993). It follows that GMACM could not have violated the Debtor's discharge rights under 11 U.S.C. § 524(a) when it attempted to collect a charge that it asserted fell due under the subject note and mortgage. <u>Padilla</u>, <u>supra</u>, at 419.

Debtor/Plaintiff's treatment of Defendant's allowed secured claim in the Plan under § 1322(b)(5) and her failure to effect any change in that treatment before she received her Chapter 13 discharge, rendered her indebtedness to Defendant excepted from discharge. 11 U.S.C. § 1328(a).

Like the Chapter 13 debtor in Huyck, supra, Debtor/Plaintiff's Plan split Defendant's secured claim into two categories: (1) the Trustee was to cure her arrearage to Defendant through the Plan; and, (2) Debtor/Plaintiff was to pay the post-filing date monthly installments directly to Defendant outside of the Plan. The amount to cure was "provided for" under the Plan, but the post-filing date installments that came due during the pendency of the case were not "provided for" under the Plan. Huyck, supra, at 513. One of the by-products of treating a claim in this manner is that the debt will not be discharged. Huyck, supra, at 514.

Debtor/Plaintiff's obligation to Defendant under the Contract was not discharged for two reasons: (1) that Debtor/Plaintiff's treatment in her Plan of Defendant's allowed secured claim under § 1322(b)(5) was binding on her, and that debt was excepted from discharge pursuant to § 1328(a)(1); and (2) that the Plan split Debtor/Plaintiff's indebtedness to Defendant into two claims, one for the pre-filing date arrearage and the second for the post-filing date installments; and the Plan only treated the former, so her liability for the latter was excepted from discharge pursuant to § 1328(a).

###